UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

        - versus -

HAMZA AHMED, et al.,

                  Defendants.

15-cr-49 (MJD/FLN)

**DEFENDANTS' JOINT MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS COUNTS IN THE INDICTMENT BASED ON
FACIAL INSUFFICIENCY, AND TO INSPECT THE GRAND JURY MINUTES**

The undersigned Defendants respectfully submit this memorandum of law in support of their motion to dismiss charges in the indictment and for the inspection of grand jury minutes.

The eight-count superseding indictment against Defendants charges each of them with two violations of 18 U.S.C. § 2339B(a)(1): conspiracy to provide material support and attempt to provide material support to the Islamic State of Iraq and the Levant (ISIL), a designated terrorist organization. [ECF 65] The indictment specifies that a form of material support Defendants allegedly conspired or attempted to provide was "personnel." Notably, however, nowhere does the indictment specify that the "personnel" to be provided would be "under [ISIL's] direction or control" or that Defendants would "organize, manage, supervise, or otherwise direct the operation of [ISIL]." 18 U.S.C. § 2339B(h).

As more fully set forth below, the limiting provisions of § 2339B(h) are essential elements of a material support charge. Section 2339B(h) is a critical constitutional check on the reach of the material support statute. As such, it establishes a "nexus" requirement between the accused's intended or actual activities and the designated terrorist organization at issue. Thus, this statute does not target lone wolves, much less lone idealists. The absence of any reference to Defendants allegedly conspiring or attempting to provide material support at the direction or under the control of ISIL, or as managers or directors of ISIL, renders the material support counts in the indictment fatally infirm.

Even if the Court finds the indictment to be facially sufficient, it should nonetheless order the government to produce the grand jury minutes for inspection, to determine if the government's evidence and instructions conformed to the limiting definition contained in § 2339B(h).  This is especially appropriate in this case, where the government's filings have made extensive references to Defendants' constitutionally-protected expressive activities.

## FACTS

Defendants are charged in an eight-count superseding indictment filed on May 18, 2015. [ECF 65]  Count One charges all Defendants with conspiracy "to provide material support and resources, including personnel, as that term is defined in title 18 United States Code, Section 2339A(b)(1), to a foreign terrorist organization, namely Islamic State in Iraq and the Levant," from March 2014 through to the present, knowing such organization was a designated terrorist organization, that had engaged in or was engaging in terrorist activity and terrorism, in violation of § 2339B(a)(1).  *Id.*  Counts two through four charge all defendants with attempt "to provide material support and resources, including personnel, to a foreign terrorist organization, namely Islamic State in Iraq and the Levant," on various dates, knowing such organization was a designated terrorist organization, that had engaged in or was engaging in terrorist activity and terrorism, in violation of § 2339B(a)(1).  *Id.*

A.    Complaint Against Hamza Ahmed

Mr. Ahmed was arrested on February 4, 2015, and arraigned on a complaint charging him with making false statements to FBI agents (the "Complaint").  The

Complaint alleged that on November 8, 2014, then 19 year-old Mr. Ahmed had been

removed from a flight bound from JFK International Airport in New York for Istanbul,

Turkey, with a forwarding ticket to Madrid, Spain. *Id.*, ¶ 7. Prior to his detention, JFK

officials prevented three other 19 and 20 year-old Minneapolis residents – later

identified as Defendants Mohamed Farah, Hanad Musse and Zacharia Abdurahman –

from boarding flights to Istanbul, Sofia, Bulgaria, and Athens, Greece, respectively. *Id.*,

¶¶ 6, 7. Questioned first by US Customs and Border Officers, and then by FBI agents,

Mr. Ahmed allegedly stated that he was traveling alone; did not know two of the other

individuals apprehended earlier by JFK officials; had funded his trip with his own

money; and recognized the photograph shown to him of H.A.M., an individual allegedly

known to have traveled to Syria in early 2014. *Id.*, ¶ 7. After this interview, Ahmed and

three other individuals took a bus back to Minneapolis, arriving on November 9, 2014.

*Id.*, ¶ 8. Upon his arrival, Mr. Ahmed was interviewed again by FBI agents, and he

allegedly reiterated that he had been traveling alone; that he planned to vacation in

Madrid for four days; that he did not have a hotel room in Madrid or know anyone there;

that he chose to fly via New York because it was cheaper; and that he did not know the

other travelers stopped by JFK officials. *Id.* Mr. Ahmed was again shown the H.A.M.'s

photograph. *Id.*, ¶ 9. He stated he knew this individual "vaguely." *Id.* The Complaint

notes that a review of Mr. Ahmed's publicly available Twitter account allegedly

revealed "a lengthy series of messages" from November 2013 to March 2014 between

H.A.M. and Mr. Ahmed, including one in December 2013 in which the H.A.M. says "I

love you for the sake of Allah akh;" Ahmed replies "Lol my bro I love you;" and the two

allegedly discuss meeting each other at "the masjid (a mosque), and needing to talk "somewhere that ain't hot." *Id.*

The Complaint noted that video footage from the Minneapolis bus station indicated that Mr. Ahmed was travelling with one of the other individuals denied departure at JFK on November 8. 2014. *Id.*, ¶ 10. In addition, transaction records from Greyhound indicated that the two had purchased their bus tickets within 25 minutes of each other. *Id.*

At Mr. Ahmed's bail hearing on February 9, 2015, the government presented extensive evidence of Mr. Ahmed's alleged "tweets" and "retweets" over his alleged Twitter account throughout the previous year, including tweets allegedly indicating Mr. Ahmed's commitment to the Islamic faith and support of a Caliphate (a form of Islamic government led by a Caliph).

   B.    The Complaint Against the Other Six Defendants

On April 20, 2015, an additional six Defendants were charged by complaint with conspiring to provide material support to ISIL ("Complaint II").

Complaint II recounted that Guled Omar had allegedly planned to leave the US "to join ISIL" in May 2014, but later abandoned the plan under parental pressure. *Id.*, ¶¶ 29-30. It further recounted how Mohamed Farah, Hanad Musse, Zacharia Abudrahman and Hamza Ahmed "attempted to leave the United States and make their way to Syria to join, and fight with, ISIL," between November 6 and November 8, 2014. *Id.*, ¶ 35. Omar attempted to fly from Minneapolis to San Diego but was not permitted to board by the FBI. *Id.*, ¶ 37. On November 5 and 6, Mohamed Farah, Abdurahman,

Musse and Ahmed traveled by Greyhound bus to New York City, and on November 8,
purchased plane tickets to various destinations in southeastern Europe. *Id.*, ¶¶ 37, 38.
All four were prevented from traveling by federal agents at JFK. *Id.*, ¶ 38. In
subsequent interviews, the four stated they were traveling alone for vacation. *Id.*, ¶ 43.

Notably, no allegation in the complaint supports the conclusion that the purpose
of the alleged plans to travel to Syria in November involved a plan to "fight" with ISIL.

Complaint II details how Omar, the Farah brothers, Musse, Abdurahman and
Daud allegedly planned another attempt to leave the U.S. for Syria. Some of their
conversations were recorded by a confidential human source. *Id.*, ¶ 51. In these
recorded conversations, Defendants allegedly described their previous efforts to leave
the United States, *id.*, ¶¶ 52-55, and a future effort using fake passports obtained in
Mexico. *Id.*, ¶¶ 56-61. They also recounted conversations with Abdi Nur, an individual
the government believes was fighting with ISIL in Syria, *id.*, ¶ 67, and who the
government believes attempted to "encourage and assist [Defendants] in traveling from
the United States to Syria to join ISIL." *Id.*, ¶ 20. At no point in Complaint II is a
statement recounted by any of the defendants that their plans in leaving the United States
included an intention to "fight" with ISIL.

Hamza Ahmed is not alleged to have participated in any plans post-November
2014 to travel outside the United States.

Complaint II documents several pieces of Defendants' alleged expressive activity,
including:

- Adnan Farah's facebook page which contained a photograph alleged al-Qaeda in Iraq member Anwar Al-Awlaki, *Id.*, ¶ 22; and

- some of the "public content" on Mr. Ahmed's alleged Twitter account, noting that the posted Tweets "appear supportive of ISIL," *Id.*, ¶ 49, including,

  - a tweet from July 11, 2014, stating "May this khilafa [caliphate] be the real thing;"

  - a tweet from July 15, 2014, stating "Hate the kuffars [non-believers] and Oppressors and the likes, love the Mumineen [the devout];"

  - and the following "retweets:"

    a.  March 3, 2014: "How can they defeat Us when we're already Destined for Victory?  The Question is 'am I gonna take part of that Victory" [sic] ? #Islam"

    b.  July 15, 2014: "@AbuAlibaghdadi: We have all Kuffar, Rajidah, Hypocrites and AQ against us no LOL?  What an honor subhanallah! #ISIS #IS

    c.  November 3, 2014: "Khaled al-Dakheel's last question: If the war against Al Qaeda gave rise to 100s of terror groups, how many groups will rise up after ISIS?"

## ARGUMENT

## I

## THE MATERIAL SUPPORT COUNTS OF THE INDICTMENT SHOULD BE DISMISSED FOR FAILURE TO STATE AN ESSENTIAL ELEMENT OF THE OFFENSE

### A.    Principles Applicable to a Sufficiency Challenge

Rule 7 of the Federal Rules of Criminal Procedure requires that "[t]he indictment . . . shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1).  An indictment is legally sufficient on its face, as the Eighth Circuit has explained, "if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." *United States v. Steffen*, 687 F.3d 1104, 1109 (8th Cir. 2012) (*quoting United States v. Fleming*, 8 F.3d 1264, 1265 (8th Cir. 1993)); *see also United States v. Olson*, 262 F.3d 795, 799 (8th Cir. 2001) ("To be sufficient, an indictment must 'contain[ ] the elements of the offense charged"); *United States v. Mallen*, 843 F.2d 1096, 1102 (8th Cir. 1988) ("[a]n indictment is fatally insufficient when an essential element 'of substance' is omitted, rather than one 'of form' only").

Notably, while there is no requirement that an indictment contain specific words or phrases, "[i]t is well-established in this circuit that citation of the statute, without more, does not cure the omission of an essential element of the charge because bare

citation of the statute 'is of scant help in deciding whether the grand jury considered' the missing element in charging the defendant." *Olson*, 262 F.3d at 799 (*quoting United States v. Camp*, 541 F.2d 737, 740 (8th Cir. 1976).

B.    IRTPA's Amendment of the Definition of "Personnel" in 18
U.S.C. § 2339B is an Essential Element of the Offense

Section 2339B makes it unlawful to "provide[ ] material support or resources to a foreign terrorist organization, or attempt[ ] or conspire[ ] to do so...." 18 U.S.C. § 2339B(a)(1). In 2004, Congress passed the Intelligence Reform and Terrorism Prevention Act (IRTPA), which amended § 2339B in several key ways, including the concept of material support in the form of "personnel."  Specifically, to address vagueness and overbreadth challenges, IRTPA delimited the prohibition on providing "personnel," by specifying that § 2339B(a) criminalizes the provision of "personnel" to a foreign terrorist organization only where a person, alone or with others, "[work]s under that terrorist organization's direction or control or . . . organize[s], manage[s], supervise[s], or otherwise direct[s] the operation of that organization."  18 U.S.C. § 2339B(h).  Section 2339B(h) also states that the ban on "personnel" does not criminalize the conduct of "[i]ndividuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives." *Id.*

Whether § 2339B(h) is an element of § 2339B(a)(1) requires an analysis of statutory text, history and purpose.  The general rule is set forth in *McKelvey v. United States*, 260 U.S. 353 (1922): "an indictment ... founded on a general provision defining the elements of an offense . . . need not negative the matter of an exception made by a

proviso or other distinct clause, whether in the same section or elsewhere, and that it is incumbent on one who relies on such an exception to set it up and establish it." 260 U.S. at 357. In some cases, however, the exceptions or provisos contained within the enumerated offense are inseparable from the enunciated rule, and thus the failure to negate the exception renders the indictment insufficient. *See*, *e.g.*, *Sutton v. United States*, 157 F.2d 661 (5th Cir.1946); *United States v. Bel–Mar Laboratories, Inc.*, 284 F.Supp. 875, 885 n. 23 (E.D.N.Y.1968) (citing cases).

As the Eleventh Circuit observes, *McKelvey*'s general provision/proviso dichotomy is only one interpretative aid among several that should be applied in parsing statutes that define offenses. *See United States v. McArthur*, 108 F.3d 1350, 1353, 1354 (11th Cir.1997) (characterizing *McKelvey* as a "merely interpretive aid[.]" to be considered along with "other indications of legislative will evident in the statute"); *United States v. Bailey*, 277 F.2d 560, 562-64 (7th Cir.1960) (stating that the purpose of the statute must be considered in determining whether the government is required to allege that the defendant's conduct does not fall within an exception). Thus, in *United States v. Cook*, 84 U.S. 168 (1872), the Supreme Court observed that some "exceptions" are so closely intertwined with the definition of the offense that the government must allege them in the indictment:

> Where a statute defining an offence contains an exception, in the enacting clause of the statute, which is so incorporated with the language defining the offence that the ingredients of the offence cannot be accurately and clearly described if the exception is omitted, the rules of good pleading require that an indictment founded upon the statute must allege enough to show that the accused is not within the exception ... as it is

universally true that no indictment is sufficient if it does not
accurately and clearly allege all the ingredients of which the
offense is composed.

*Id.* at 173-74 (emphasis added).

That principle may apply even when the exception is set forth in a subsequent
clause or section of the statute. *Id.* at 174-75 (noting that an exception may be "clothed
in such language ... to define the offence [ ] that it would be impossible to frame the
actual statutory charge in the form of an indictment with accuracy, and the required
certainty, without an allegation showing that the accused was not within the exception
contained in the subsequent clause, section, or statute"); *see also McArthur*, 108 F.3d at
1353 (discussing *McKelvey* and stating that "[a] second, but related, rule is that where
one can omit the exception from the statute without doing violence to the definition of
the offense, the exception is more likely an affirmative defense").

Here, "the ingredients of [§ 2339B(1)(a)] cannot be accurately and clearly
described if [§ 2339B(h)] is omitted." *Cook*, 84 U.S. at 173. Several aspects of § 2339B
support this conclusion:

*First*, the wording of § 2339B(h) is not even phrased as an exception, but an
affirmative requirement of the government's proof. *See id.* ("No person may be
prosecuted under this section in connection with the term 'personnel' unless that person
has knowingly provided, attempted to provide, or conspired to provide a foreign terrorist
organization with 1 or more individuals (who may be or include himself) to work under
that terrorist organization's direction or control or to organize, manage, supervise, or
otherwise direct the operation of that organization."). *See United States v. Kloess*, 251

10

F.3d 941, 944 (11th Cir. 2001), (courts begin with "language and structure of the statute itself" to determine whether the exception or proviso is part of the general statutory offense).

*Second*, unlike the other changes made by IRTPA to the definition of "material support and resources," this detailed definition of "personnel" was added to § 2339B and *not* to § 2339A. The fact that Congress chose not to apply the more detailed definition to § 2339A makes it clear that the definition Congress provided for § 2339B is an integral component of § 2339B. *See United States v. Stewart*, 590 F.3d 93, 118 & n. 21 (2d Cir. 2009) (observing that the definition of personnel provided by § 2339B(h) does not apply to § 2339A).

*Third*, IRTPA's legislative history states that the new language added to § 2339B in 2004 was a critical narrowing clarification of the definition of personnel. *See* H.R. Rep. No. 108–724, at 224 (2004), 2004 WL 2282343 (stating that the Act "more clearly defines the term material support"); Material Aid for Terrorists: Hearing on S. 2679 Before Senate Judiciary Committee, 108th Cong. 4 (2004) (statement of Daniel J. Bryant, Assistant Attorney General) ("The provision further clarifies that individuals who act entirely independent of the foreign terrorist organization ... shall not be considered to be working under the foreign terrorist organization's direction and control."); *Three Years After September 11: Keeping America Safe*, March 2004 Report submitted by Marjority and Minority Staff of United States Senate Committee on the Judiciary Subcommittee on Terrorism, Technology, and Homeland Security at 109 ([IRTPA "amends current law by defining the knowledge required to violate the statute,

more specifically defining 'personnel,' 'training,' and 'expert advice,' and specifying that nothing contained in this statute shall be construed to abridge free speech rights").

*Finally*, IRTPA's amendment was a critical addition to § 2339B, because it addressed the vagueness and overbreadth concerns that been the subject of several decisions interpreting it.  As such, the amendment ensured that the definition of "personnel" "provide[s] a person of ordinary intelligence fair notice of what is prohibited." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 27 (2010) (*HLP*) (*quoting United States v. Williams*, 553 U.S. 285, 304 (2008)).  In *HLP*, the Supreme Court noted that Congress's "narrowing definitions to the material-support statute over time . . .  increased the clarity of the statute's terms," and specifically, that the narrowed definition of "personnel" – to those working under the terrorist organization's direction or control, rather than independently – adequately addressed vagueness concerns.  *Id.* at 23.

    C.    <u>The Material Support Counts in the Indictment Are Insufficient</u>

None of the material support counts in the indictment allege that Defendants conspired or attempted to act at the direction or under the control of ISIL, or with a view to organizing or directing ISIL's activities themselves.  Indeed, as Counts One is currently phrased, it suggests the contrary, since it incorporates the definition of material support and resources set forth in § 2339A(b)(1), which as noted above, does *not* incorporate the definition of personnel in § 2339A(B).  *See Stewart*, 590 F.3d at 118.

As such, these counts are facially insufficient and should be dismissed.

II.

THE GOVERNMENT SHOULD BE ORDERED TO
PRODUCE THE GRAND JURY MINUTES FOR
INSPECTION

A.    <u>Applicable Principles</u>

Rule 6 of the Federal Rules of Criminal Procedure permits a court to authorize the

disclosure of grand jury materials "at the request of a defendant who shows that a

ground may exist to dismiss the indictment because of a matter that occurred before the

grand jury." Fed.R.Crim.P. 6(e)(3)(E)(ii).  The Supreme Court has required a "showing

of particularized need for grand jury materials" before disclosure is appropriate, *United

States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983), but in discussing variations on the

traditional doctrine of grand jury secrecy has also acknowledged "the growing

realization that disclosure, rather than suppression, of relevant materials ordinarily

promotes the proper administration of criminal justice."  *Dennis v. United States*, 384

U.S. 855, 870 (1966).

To prevail in a motion to inspect grand jury testimony, the defense must show:

"the transcript was needed to avoid a possible injustice, the need for disclosure was

greater than the need for continued secrecy, and his request was structured to cover only

material needed."  *In re Grand Jury Proceedings Relative to Perl* ("*Perl*"), 838 F.2d

304, 306 (8th Cir. 1988), *citing Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S.

211, 222 (1979); *see e.g. U.S. v. Evans & Associates Const. Co., Inc.*, 839 F.2d 656, 658

(10th Cir. 1988) (not an abuse of discretion to order government to disclose grand jury

testimony where "some events testified to had occurred nearly 20 years before,

13

disclosure would not interfere with ongoing investigation, charges brought against [defendants] were complex and testimony would be extremely helpful").

The decision to disclose grand jury material is "left to the sound discretion of the district court and will not be reversed in the absence of an abuse of discretion." *In re Grand Jury Subpoenas Duces Tecum*, 904 F.2d 466, 468 (8th Cir. 1990).

    B.    <u>This Court Should Order the Government to Produce the Grand Jury Minutes for Inspection</u>

Even if the indictment withstands a facial challenge, the Court should nonetheless order the government to produce a limited segment of the grand jury minutes for inspection to avoid the "possible injustice," *Perl*, 838 F.2d at 306, that Defendants were indicted on the basis of (a) improper grand jury instructions and (b) insufficient evidence to sustain the indictment. This need is particularly pressing here where there is a strong likelihood that entirely irrelevant evidence was presented to the grand jury relating to Defendants' constitutionally-protected expressive activities during the twelve months or so preceding their apprehension.

As noted above, in order to sustain a conviction under § 2339B where the material support being offered or provided is "personnel," the government must establish that the "personnel" were acting or were planning to act either under the terrorist organization's direction or control, or in some managerial capacity with respect to the organization. *See* § 2339B(h). In other words, there must be a nexus between the defendant's conduct or planned conduct and the employee/employer limitations of § 2339B(h). In the absence of such nexus, the statute, as applied to the conduct at issue,

is impermissibly vague. *See HLP*, 561 U.S. at 27 (no vagueness problem with material support statute because it "avoid[s] any restriction on independent advocacy, or indeed any activities not directed to, coordinated with, or controlled by foreign terrorist groups").

As fully outlined in the facts section of this brief, nothing in the discovery or previous filings in this case indicate any evidence – beyond speculation – that Defendants were acting (or seeking to act) in that capacity for ISIL.  A few public tweets with someone allegedly known to be in Syria in early 2014 do not constitute evidence of intent to provide material support in the form of personnel.  Nor do a handful of tweets or Facebook statements allegedly indicating support for a Caliphate or retweets allegedly indicative of support for ISIS.  However unpopular these ideas might be, they fall well within the boundaries of First Amendment protection. *Board of Educ., Island Trees Union Free School Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982) (dissemination of information and ideas is protected); *Elrod v. Burns*, 427 U.S. 347, 356 (1976) ("[P]olitical belief and association constitute the core of those activities protected by the First Amendment."); *Hill v. Colorado*, 530 U.S. 703, 787 (2000) (Kennedy, J., dissenting) ("Laws punishing speech which protests the lawfulness or morality of government's own policy are the essence of the tyrannical power the First Amendment guards against.").

Consistent with these principles, as the Supreme Court stated in *HLP,* the material support statute leaves persons free to "say anything they wish on any topic," including terrorism.  *HLP*, 561 U.S. at 25.  It does not prohibit independent advocacy of any kind.

15

*See id.* at 24.   Indeed, it does not prohibit or punish mere membership in or association

with terrorist organizations.  *See id.* at 39.  As the Court explains:

> [The material support statute] does not seek to suppress ideas
> or opinions in the form of 'pure political speech.' Rather, [it]
> prohibit[s] 'material support,' which most often does not take
> the form of speech at all. And when it does, the statute is
> carefully drawn to cover only a narrow category of speech to,
> under the direction of, or in coordination with foreign groups
> that the speaker knows to be terrorist organizations.

*Id.* at 26.  While constitutionally protected activity, including speech, may also

constitute evidence in a conspiracy charge, *see*, *e.g.*, *United States v. Rahman*, 189 F.3d

88, 177 (2nd Cir. 1999), courts have been mindful to ensure that defendants are punished

for their illegal agreements and not for their constitutionally protected activities.  They

therefore carefully scrutinize the alleged link between that intent and First Amendment

protected activity.  *See*, *e.g. Scales v. United States*, 367 U.S. 203, 229 (1961) ("all

knowing association with the conspiracy is a proper subject for criminal proscription as

far as First Amendment liberties are concerned"); *United States v. Spock*, 416 F.2d 165,

172-74 (1st Cir. 1969) (discussing courts' obligations when confronted with alleged

"bifarious undertakings" involving both legal and illegal conduct).  None of the evidence

revealed thus far by the government, however, indicates that the grand jury was provided

with evidence that Defendants acted, conspired or attempted to act "under the direction

of, or in coordination with foreign groups that the speaker knows to be terrorist

organizations."  *Id.*

In addition, there is strong reason to believe that the government did not

adequately charge the grand jury regarding the correct elements of the material support

16

charge. This is apparent from the government's consistent arguments to the Court that Defendants' alleged crime was complete with an intent or willingness to "join" ISIL, with no mention of the nature of such membership. *See* Government's Opposition to Defendants' Motion for Bail, Docket #151 at 1 ("[t]his case arises out of a long-running investigation into young men who have left Minnesota, or have attempted to leave Minnesota, to join the terrorist organization, Islamic State of Iraq and the Levant"); *id.* at 3 ("each defendant made a concerted effort to leave the United States in order to join a terrorist organization of uncompromising violence"); Government's Opposition to Mr. Ahmed's Motion to Dismiss, Docket #46 at 9-10 ("[t]he plain language of the statute . . . require[s] only that the personnel so provided eventually act under the foreign terrorist organization's direction or control – which they will do when they reach their destination and join the organization"); *see also* Complaint II, ¶. 4. (prefacing the charges against six of the defendants in this case as part of an investigation into the "joining" of terrorist organizations overseas).

Most notably, in responding to Hamza Ahmed's motion to dismiss the material support charges on this basis, the government bizarrely maintained that "[n]o court has held that the government must specifically charge and prove that a defendant knew that he would work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization." Docket #46 at 10. The government is mistaken. The Supreme Court has made clear that the government must indeed prove that the defendants knowingly intended or attempted to work under the alleged terrorist organization's direction or control. *See HLP* at 23

17

("[p]roviding material support that constitutes 'personnel' is defined as knowingly

providing a person 'to work under that terrorist organization's direction or control or to

organize, manage, supervise, or otherwise direct the operation of that organization'");

*see also United States v. Shah*, 474 F. Supp. 2d 492, 493-494 (S.D.N.Y. 2007) (denying

motion to dismiss on vagueness grounds noting "any reasonable doctor would be on

notice from the plain language of the statute that conspiring to provide, or providing or

attempting to provide, 'medical support to wounded jihadists' under the direction and

control of al Qaeda, knowing that al Qaeda engages in terrorism or terrorist activity,

would constitute the provision of . . . 'personnel' – '[one] or more individuals (who may

be or include himself) to work under [a foreign] terrorist organization's direction or

control'").

      The government clearly has adopted the erroneous position that membership,

association and mere presence is the equivalent of support – a position flatly rejected by

the Supreme Court in *HLP*.   On that basis alone, disclosure and examination of the

grand jury minutes is required.

      To ensure the injustice that Defendants were indicted on legally insufficient

evidence, and not on the basis of constitutionally-protected expressive activity, and that

the grand jury was properly charged, a limited segment of grand jury minutes should be

disclosed for inspection to defense counsel pursuant to Fed.R.Crim.P. 6(e).  This

segment need only include:

- Testimony and documentary evidence relating to Defendants' alleged communications with, efforts to communicate with, and interest in communicating with, ISIL members;

- Testimony and documentary evidence relating to the alleged ISIL connections of any individuals with whom Defendants communicated, tried to communicate with, or expressed evidence of such individuals' connections to ISIS;

- The extent of evidence disclosed to the grand jury relating to Defendants' expressive activities – including emails, tweets, Facebook posts, and other internet posting and communications;

- Any other evidence presented to the grand jury to meet the government's obligations under 18 U.S.C. § 2339B(h); and

- The legal instructions provided to the grand jury members relating to the charges under 18 U.S.C. § 2339B.

We respectfully submit that this is a relevantly narrow request of grand jury materials that fully meets the Eighth Circuit's relevancy and focused requirements in the context of the production of grand jury transcripts.   *Perl*, 838 F.2d at 306.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that their motion to dismiss Counts One through Four of the indictment be granted. In addition, the government should be directed to produce a limited segment of the grand jury minutes to defense counsel for inspection. Defendants reserve the right to make additional motions after any examination of the requested minutes.

Dated: August 7, 2015                MURRAY LAW, LLC

                                      By: _s/JaneAnne Murray_
                                      JaneAnne Murray, #384887
                                      The Flour Exchange Building
                                      310 Fourth Avenue South, #5010
                                      Minneapolis, Minnesota 55415
                                      Telephone: (612) 339-5160
                                      jm@mlawllc.com

                                      **ATTORNEY FOR HAMZA
                                      NAJ AHMED**


Dated: August 7, 2015                PAUL ENGH LAW OFFICE

                                      By: _s/Paul C. Engh_____
                                      Paul C. Engh, #134685
                                      220 South Sixth Street, # 1225
                                      Minneapolis, Minnesota 55402
                                      Telephone: (612) 252-1100
                                      engh4@aol.com

                                      **ATTORNEY FOR ADNAN
                                      ABDIHAMID FARAH**

Dated: August 7, 2015                    DELEON & NESTOR, LLC

                                         By: ___s/Bruce D. Nestor___
                                         Bruce D. Nestor, #0318024
                                         3547 Cedar Avenue South
                                         Minneapolis, Minnesota 55407
                                         Telephone: (612) 659-9019
                                         Facsimile: (612) 436-3664
                                         nestor@dnestlaw.com

                                         **ATTORNEY FOR**
                                         **ABDURAHMAN YASIN**
                                         **DAUD**


Dated: August 7, 2015                    FELHABER LARSON

                                         By: __s/Jon M. Hopeman_____
                                         Jon M. Hopeman, #47065
                                         Marnie E. Fearon, #305078
                                         220 South Sixth Street, # 2200
                                         Minneapolis, Minnesota 55402
                                         Telephone: (612) 339-6321
                                         Facsimile: (612) 338-0535
                                         jhopeman@felhaber.com
                                         mfearon@felhaber.com

                                         **ATTORNEYS FOR**
                                         **ZACHARIA YUSUF**
                                         **ABDURAHMAN**

Dated: August 7, 2015            GASKINS, BENNETT,
BIRRELL, SCHUPP, LLP


By:   *s/Andrew S. Birrell*
Andrew S. Birrell, #133760
Paul C. Dworak, # 391070
333 South Seventh Street, # 3000
Minneapolis, Minnesota 55402
Telephone: (612) 333-9500
Facsimile: (612) 333-9579
abirrell@gaskinsbennett.com
pdworak@gaskinsbennett.com

**ATTORNEYS FOR HANAD
MUSTOFE MUSSE**


Dated: August 7, 2015            MITCHELL, BRUDER &
JOHNSON

By:   *s/Glenn P. Bruder*
Glenn P. Bruder, #148878
7505 Metro Boulevard, Suite 325
Edina, Minnesota 55439
Telephone: (952) 831-3174
Facsimile: (951) 831-3176
gbruder@bruderlaw.com

**ATTORNEY FOR GULED
ALI OMAR**

22