UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

      Plaintiff/Respondent,

v.

Guled Ali Omar,

      Petitioner/Petitioner.

**AMENDED**[1]
**MEMORANDUM OPINION
AND ORDER**
Crim. No. 15-049 (07) (MJD)

---

Andrew R. Winter, Assistant United States Attorney, Counsel for Plaintiff/Respondent.

James M. Ventura and C. Justin Brown, Counsel for Defendant/Petitioner.

---

This matter is before the Court on Petitioner's motion to vacate or correct an illegal sentence pursuant to 28 U.S.C. § 2255.  (Doc. No. 914.)

## I.   Background

On June 3, 2016, a jury found Petitioner guilty on all counts in the Superseding Indictment: Count 1, Conspiracy to Murder Outside the United States; Count 2, Conspiracy to Provide Material Support to a Designated Foreign

---

[1] Applying the AP Style rule of capitalizing "Black" when used in a racial, ethnic or cultural sense.  https://apstylebook.com.

Terrorist Organization; Count 3, Attempting to Provide Material Support to a Designated Foreign Terrorist Organization; Count 4, Attempting to Provide Material Support to a Designated Foreign Terrorist Organization; and Count 10, Attempted Financial Aid Fraud.  (Doc. No. 594.)

Prior to sentencing, a presentence investigation report ("PSR") was prepared.  As set forth in the PSR, the base offense level for Count 1, Conspiracy to Murder, is 33 pursuant to U.S.S.G. § 2A1.5(b)(1).  A twelve-level enhancement was then applied pursuant to § 3A1.4(a) because the crime of conviction involved or was intended to promote a federal crime of terrorism.  In addition, § 3A1.4(b) provides that where the terrorism enhancement applies, the Petitioner's criminal history category shall be VI.  An additional two-level enhancement was applied for obstruction of justice pursuant to § 3C1.1, based on Petitioner's testimony at trial, where the Court found:

> The Defendant's false testimony was calculated to protect himself and his co-conspirators, as well as his fellow ISIL members that are still engaged in committing terrorist acts.  The Defendant's statements were further designed to denigrate the cooperating defendants who opted to speak out about the nature and extent of the conspiracy and the Defendant's role in it.  The Court thus finds that the Defendant obstructed justice by providing such false testimony to the jury, therefore the obstruction enhancement is warranted.

(Doc. No. 829 (Sentencing Memoranda and Opinion at 9).)  As a result, the total offense level was determined to be 47, which was the greatest of the adjusted total offense levels for Petitioner's convictions.  The offense level was then reduced to 43 pursuant to Chapter 5, Part A (comment n.2.)  The resulting applicable guideline range based on a total offense level 43, criminal history category VI was found to be life imprisonment.

Trial counsel filed a sentencing position brief in which he objected to the application of the terrorism enhancement and the obstruction of justice enhancement.  (Doc. No. 708.)  Counsel also filed a motion for downward departure/variance.  (Doc. No. 710.)  The Court overruled Petitioner's objections and adopted the guideline calculation set forth in the PSR.  (Doc. No. 829 (Sentencing Memorandum and Opinion).)   In consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the Court varied from the applicable guideline range of life imprisonment and sentenced Petitioner to 420 months imprisonment on Count 1, 180 months on Counts 2, 3 and 4 and 60 months on Count 10, to be served concurrently.  Petitioner's convictions and sentence were affirmed on appeal.  United States v. Farah et al., 899 F.3d 608 (8th Cir. 2018) reh'g and reh'g en banc denied, (Oct. 1, 2018).

On December 23, 2019, Petitioner filed the instant motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct his sentence.  In this motion, Petitioner has asserted a number of claims based on ineffective assistance of counsel.

## II.    Standard of Review

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).  Section 2255 is intended to provide federal prisoners a remedy for jurisdictional or constitutional errors.

Sun Bear v. United States, 644 F.3d 700, 704 (8th Cir. 2011).  It is not intended to be a substitute for appeal or to relitigate matters decided on appeal.  See Bousley v. United States, 523 U.S. 614, 621 (1998); Davis v. United States, 417 U.S. 333, 346-47 (1974).

Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been

raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.  A movant may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error.  United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citations omitted).  Claims of ineffective assistance of counsel may constitute the "cause and prejudice" required to excuse otherwise procedurally defaults claims.  Boysiewick v. Schriro, 179 F.3d 616, 619 (8th Cir. 1999).

Petitioner is entitled to an evidentiary hearing on his petition "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  "[A] petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact."  Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995) (internal citations omitted).

Based on the record, the Court finds that Petitioner has not demonstrated that he is entitled to an evidentiary hearing because he has failed to demonstrate

that he is entitled to relief with respect to claims 2 through 9, and because the

allegations supporting claim 1 cannot be accepted as true because they are

contradicted by the record and are inherently incredible.

## III.   Discussion

### A. Ineffective Assistance of Counsel

Claims of ineffective assistance must be scrutinized under the two-part test

set forth in Strickland v. Washington, 466 U.S. 668 (1984).  Under the Strickland

test, Petitioner must prove that: 1) counsel's representation was deficient; and 2)

counsel's deficient performance prejudiced Petitioner's case.  Kingsberry v.

United States, 202 F.3d 1030, 1032 (8th Cir. 2000) reh'g and reh'g en banc denied,

(March 28, 2000).

To satisfy the first prong of the Strickland test, Petitioner must show that

counsel's representation fell below an objective standard of reasonableness under

professional norms.  Strickland, 466 U.S. at 688.  The inquiry should be whether

counsel's assistance was reasonable considering all the circumstances

surrounding the case.  Id.  Judicial scrutiny of counsel's performance should be

highly deferential, and the general presumption is that counsel's conduct "falls

within the wide range of reasonable professional assistance."  Id. at 689.

To satisfy the second prong under the <u>Strickland</u> test, Petitioner must show that but for counsel's errors, the outcome of the proceedings would have been different.  <u>Id.</u> at 691.

### 1.  Ineffective Assistance During and in Relation to Plea Negotiation

Petitioner asserts that trial counsel was ineffective with respect to Petitioner's efforts to plead guilty in this case.  He claims that at various points after his arrest and before trial, he desired to enter into plea negotiations with the government and that he repeatedly told trial counsel he wanted to plead guilty. (Petitioner Aff. ¶ 2.)  Petitioner was initially charged with conspiring and attempting to provide material support to a terrorist organization; charges which carried a maximum term of imprisonment of fifteen years.  Petitioner admits that counsel made overtures to the government regarding plea negotiations, but that the government did not have an offer to extend Petitioner because it believed Petitioner was more culpable than his codefendants.

The government asserts that early in this case, it informed all defendants and their counsel that a window existed in which they could resolve their case with a guilty plea to the charge of conspiracy to provide material support to a

terrorist organization because a second superseding indictment was forthcoming alleging defendants conspired to commit murder outside the United States; a charge that carries a statutory maximum penalty of life in prison.  The government also informed defendants and their counsel that if the second superseding indictment were filed, any resolution of the case would have to involve a guilty plea to the murder charge.

On August 24, 2015, before the second superseding indictment was filed, the government afforded Petitioner and his counsel a reverse proffer, which summarized the evidence against Petitioner to ensure he understood the case against him and to aid him in assessing whether or not to plead guilty.  The government asserts that at this reverse proffer, Petitioner was informed that the government would not extend a plea offer to Petitioner, but that if he was interested in resolving the case, he could propose terms on which his case would be resolved.  Petitioner claims that contrary to his wishes, trial counsel did not submit such a proposal.

A superseding indictment was filed on October 21, 2015 that charged Petitioner with the conspiracy to murder charge.  Petitioner claims that counsel advised him that he could not plead guilty to the murder charge because such

charge was not supported by the facts of the case.  Petitioner seeks to support

this claim by a letter signed by counsel for Petitioner and four codefendants, in

which counsel inquired into the willingness of the government to reach a plea

agreement to counts other than the conspiracy to murder count.  (Doc. No. 914-

3.)   The letter proposed the following: "Upon entry of a plea and at the time of

sentencing, the United States would dismiss all charges filed pursuant to 18

U.S.C. § 956(a), and any additional charges to be negotiated.  The Defendants are

not willing or able to plead to the § 956(a) charge because they would not be able

to establish a proper factual basis for the plea and because undersigned counsel

would not advise them to enter a plea to this charge."  (Id.)

Petitioner further claims that counsel did not inform him that he could

plead guilty without a plea agreement.  Had he known this, Petitioner asserts he

would have pleaded guilty – either before or after the second superseding

indictment – and received credit for acceptance of responsibility and a more

lenient sentence.  (Petitioner Aff. ¶ 5.)

The government asserts that the record does not support Petitioner's

claims that had trial counsel properly advised him of his right to plead guilty

without a plea agreement, or proposed a plea offer to the government, he would

have pleaded guilty.  In support, the government has submitted an unsworn letter from trial counsel in which he states that Petitioner's claims that Petitioner advised counsel that he wanted to plead guilty and instructed him to seek a plea agreement are categorically untrue.  (Gov't Ex. 4 ¶ 1.)  Trial counsel further asserts that he did advise Petitioner that pleading guilty to all charges in the indictment was an option.  (Id. ¶ 2.)  Counsel further concedes that Petitioner repeatedly authorized him to explore plea negotiations, but Petitioner never expressed a willingness to plead guilty.  (Id.)  Counsel further asserts that had Petitioner expressed a desire to plead guilty, he would have informed the government and the Court.  (Id. ¶ 5.)  However, Petitioner repeatedly told counsel that providing a factual basis for a plea would be a problem, because he did not believe he committed a crime.  (Id.)

The government further asserts that this claim has no merit because Petitioner has failed to identify what he was willing to plead guilty to or what sentence he would agree to.  Further, Petitioner cannot show prejudice because the record shows that Petitioner, then and now, is steadfastly maintaining his innocence.

The Court finds this claim to be without merit.  A defendant who maintains his innocence throughout all stages of the proceedings and shows no indication he would admit his guilt undermines his claim that he would have pleaded guilty if he had received better advice from counsel.  See Sanders v. United States, 341 F.3d 720, 723 (8th Cir. 2003) (finding the record did not support petitioner's claim that he would have pleaded guilty if he had been properly advised by counsel as petitioner denied his guilt throughout proceedings); Chesney v. United States, 367 F.3d 1055, 1059-60 (8th Cir. 2004) ("We interpret the district court's ruling to mean that having personally observed Chesney's extensive trial testimony, in which he adamantly denied guilt, the court did not believe that Chesney would have pleaded guilty under the government's pre-trial offer, even assuming he won the inevitable swearing contest with his trial counsel about whether the plea offer was communicated. We find no error in the district court's conclusion.").

Here, as in Chesney, the Court does not find credible Petitioner's claim that had he been given proper advice from counsel, he would have pleaded guilty before or after the second superseding indictment was filed.  Petitioner maintained his innocence throughout these proceedings.   His belief in his

innocence and his unwillingness to plead guilty early in the proceedings is

reflected in correspondence from counsel.  (Doc. No. 946 (Bruder Ex. 1 (email

from trial counsel to counsel for co-defendants that "Guled basically thinks he's

not guilty")); Ex. 2 (September 3, 2015 letter from trial counsel to Petitioner,

affirming Petitioner's position that he would was not willing to strike a deal with

the government or provide substantial assistance).)

At trial, he testified on his own behalf and repeatedly lied, under oath, to

protect himself, his co-conspirators, and fellow ISIL members that were still

engaged in committing terrorist acts.  He also lied on the stand to denigrate those

defendants who chose to cooperate with the government.  At sentencing, the

Court also found that Petitioner was not credible during his allocution based on

the Court' knowledge of the evidence presented at trial and of Petitioner's family

– which included a brother that joined al Shabaab, a brother that was convicted

on the charge of threatening federal officers and a person assisting federal

officers when those officers were attempting to interview family members of the

Petitioner after Petitioner was prevented from boarding a flight, and another

brother that was shot multiple times by a Somali gang.  (Doc. No. 872 (Sent. Tr. at

23-4, "So everything that you have said here I don't believe.").)

Further, the record is clear that Petitioner was informed by the government that it was not offering him a plea deal, that he could propose terms on which to resolve his case, and that a superseding indictment was forthcoming that would include a charge that greatly enhanced his exposure to significantly greater sentence.

The Court also does not find credible his claim that he would have entered a straight plea to the charge of conspiracy to murder outside the United States. Petitioner admits the applicable guideline range for that count would have been 360 months to life in prison.  (Doc. No. 952 (Reply Brief at 11).)  Under such circumstances, the Court does not find it credible that he would have pleaded guilty without an agreement as to a cap on sentencing.

### 2.  Failure to Challenge Terrorism Enhancement/Criminal History

Petitioner further claims that trial counsel was ineffective for failing to challenge his criminal history, which was raised to a category VI by application of the terrorism enhancement set forth in U.S.S.G. § 3A1.4(b).  Petitioner acknowledges that counsel did object to the application of the terrorism enhancement, but the basis for that objection was that Petitioner's conduct was not intended to influence the action of any nation-state and thus did not fall

under the purview of the enhancement.  (Doc. No. 914-1 at 32 n. 16.)  Instead,

counsel should have based the objection on the resulting criminal history

category and should have moved for a downward departure based on a criminal

history category that overstated his actual criminal history.

The Court finds that even if trial counsel had moved for a downward

departure based on criminal history pursuant to § 4A1.3(b)(1), the applicable

guideline range for a total offense level 43, criminal history category I, is life

imprisonment.  In addition, trial counsel submitted a Position on Sentencing in

which he objected to the application of the terrorism enhancement on multiple

grounds, including that the application would convert Petitioner from a category

I to a category VI offender subjecting him to a significantly higher guideline

range.  (Doc. No. 78 at 6.)  Further, counsel filed a motion for a downward

variance/departure asking the Court to impose a sentence of no more than 15

years, as such a sentence would serve the sentencing purposes of 18 U.S.C.

3553(a).  Accordingly, based on the record in this case, Petitioner's claim of

ineffective assistance of counsel based on a failure to challenge criminal history is

without merit, as Petitioner cannot show he was prejudiced by alleged error of

counsel.

### 3.  Failure to Object to Voir Dire Questions

Petitioner claims that trial counsel was ineffective for failing to object to the form of voir dire in general, and specifically, to voir dire questions that allowed prospective jurors to self-determine their ability to be fair and impartial. For example, the Court asked one prospective juror "Q: Dealing with your feelings or thoughts about terrorism, is there anything about that that's going to keep you from being a fair and impartial juror?  A:  No."  (Doc. No. 848 (Tr. at 165).)  Petitioner asserts similar exchanges took place with other prospective jurors, and that the Court did not follow up to determine the prospective jurors' feelings about terrorism.  Petitioner further asserts that because the Court did not ask follow-up questions, trial counsel should have done so.

> [T]he question whether a venireman is biased has traditionally been determined through voir dire culminating in a finding by the trial judge concerning the venireman's state of mind.... [S]uch a finding is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province.  Such determinations [are] entitled to deference...."

United States v. Nelson, 347 F.3d 701, 710–11 (8th Cir. 2003) (quoting Wainwright v. Witt, 469 U.S. 412, 428–29 (1985)). "Because the trial judge is in the best position to analyze the demeanor and credibility of a venireman, we will

not reverse a court's ruling absent an abuse of discretion." Id.  (quoting United

States v. Ortiz, 315 F.3d 873, 888 (8th Cir. 2002)).

A trial court "abuses its discretion when the overall examination of the

prospective jurors and the charge to the jury fails to protect that defendant from

prejudice or fails to allow the defense to intelligently use its preemptory

challenges."  United States v. Granados, 1117 F.3d 1089, 1092 (8th Cir. 1997).

Where a case involves sensitive issues such as racial bias, the better practice is to

"direct probing questions touching areas of possible prejudice to each individual

juror."  Bear Runner, 502 F.2d at 911.

In this case, the Court questioned each prospective juror individually, and

asked specific questions going to bias, such as whether the prospective juror had

contact with minority groups and whether the contacts were favorable,

unfavorable or a mixed bag.  (See eg. Doc. No. 849 (Tr. at 156).)  The Court then

asked whether the prospective jurors had contact with Somali Americans.  (Id. at

157.)  The Court then followed up with questions as to whether the prospective

jurors could be fair and impartial in light of the fact that the trial involved

terrorism charges.  (Id.)  Depending on the responses to the questions posed, the

Court exercised its discretion by excusing the prospective juror or allowing them

to remain on the panel.  Accordingly, the Court finds that Petitioner has failed to demonstrate that the manner in which the Court conducted voir dire violated his right to a fair and impartial jury under the Sixth Amendment.  As a result, Petitioner cannot show that trial counsel's failure to object to the manner in which voir dire was conducted, or to ask follow-up questions, fell below an objective standard of reasonableness, and he cannot show that but for such failure, there is a reasonable likelihood that the result of the trial would have been different.

### 4.  Failure to Object to Jury Panel

Petitioner claims that trial counsel was ineffective for failing to object to the jury panel as not representing a fair cross-section of the community.  He asserts that at the time of trial, there were approximately 57,00 people of Somali heritage living in Minnesota, and that 7.2% of Minnesota's population was Black or African American.  Yet, according to Petitioner's affidavit: "To the best of my recollection, there were only two or three Black prospective jurors in the entire jury panel, and the impaneled jury consisted only of white jurors."  (Petitioner Aff. ¶ 7.)

To succeed on this claim, Petitioner must show: that the group alleged to be excluded is a distinctive group in the community; that the representation was not reasonable in relation to the number of such persons in the community; and that this underrepresentation is due to systemic exclusion in the jury-selection process.  Duren v. Missouri, 439 U.S. 357, 364 (1979).

Pursuant to the Jury Plan for the District of Minnesota, prospective jurors are selected from voter registration lists, driver's license lists and state identification card holder lists.  The court uses the voter registration lists as the primary source of names for federal court juries and supplements with the other above-named lists.  www.mnd.uscourts.gov/sites/mnd/files/Jury-Selection-Plan.pdf.  Thus, to meet the third element of the Duren test, Petitioner must show that Blacks or Somali Americans faced obstacles to voter registration in Minnesota.  See United States v. Rodriquez, 581 F.3d 775, 790 (8th Cir. 2009) ("Absent proof that Native Americans, in particular, face obstacles to voter registration in presidential elections, [e]thnic and racial disparities between the general population and jury pools do not by themselves invalidate the use of voter registration lists and cannot establish the systematic exclusion of allegedly

under-represented groups.") (quoting United States v. Morin, 338 F.3d 838, 844

(8th Cir. 2003)).

Petitioner has put forth no evidence to show that Blacks or Somali

Americans face obstacles to voter registration, or to obtain a driver's license or

state identification card.  As a result, Petitioner cannot show that trial counsel's

failure to object to the jury panel fell below an objective standard of

reasonableness, and he cannot show that but for such failure, there is a

reasonable likelihood that the result of the trial would have been different.

### 5.   Failure to Object to Improper Statements by the Government

Petitioner also claims that trial counsel was ineffective for failing to object

to questions posed by the government during cross-examination of Petitioner.

Petitioner claims that the government asked Petitioner why one prosecution

witness, Ibrahim Bashi, wanted a photo of his son when he got off the stand in an

attempt to get Petitioner to confirm that his son, Yusuf Jama, had been killed in

Syria after joining ISIL.  The government further asked Petitioner if he knew

what happened to Bashi's son, Ahmed Bashi, whom his father believed was

killed in Somalia, when Petitioner had already testified that he did not know

what happened to Ahmed Bashi.

Petitioner asserts trial counsel should have objected to these questions on a number of bases: outside the scope of direct examination, irrelevant, speculation, opining on the credibility of another witness, and because such questions were intended to villainize Petitioner by suggesting he was responsible for the deaths of Bashi's sons.

In response, the government asserts the questions were not improper.  The questions concerning Yusuf Jama were to challenge Petitioner's testimony that co-conspirator Abdirizak Warsame informed Petitioner of Jama's plan to travel to Syria, despite evidence presented at trial that Petitioner had provided Jama information about traveling and encouraged Jama to join ISIL.  Further, the questions concerning Ahmed Bashi were to challenge Petitioner's testimony in light of the evidence that had been presented that Petitioner assisted Bashi in his travels overseas to join Al Shabab.  Finally, the government asserts that the questions at issue were not asked to force Petitioner to vouch for the truthfulness of Ibrahim Bashi, but to determine whether Petitioner disputed facts in the record.

Even assuming the government's questions were improper and required Petitioner to vouch for the credibility of another witness, Petitioner must still

show he was prejudiced as a result.  United States v. Harrison, 585 F.3d 1155,

1159 (9th Cir. 2009) (finding prosecution erred by requiring defendant to vouch

for the credibility of another witness, but finding no prejudice given the

overwhelming evidence supporting his conviction).  In this case, the Court finds

there was overwhelming evidence presented at trial supporting Petitioner's

convictions.  Accordingly, Petitioner cannot show that the results of his trial

would have been different if trial counsel had objected to the above questions at

trial.

### 6.  Improperly Eliciting Prejudicial Testimony

Petitioner asserts that trial counsel was ineffective by not objecting to

testimony at trial that Petitioner went to a gun firing range.  During cross-

examination of Abdullahi Yusuf, the following exchange took place between trial

counsel and Yusuf concerning Yusuf's testimony that the co-conspirators played

paintball as a way of military training:

> Q:  All right.  And if it was military options – or military training, didn't
> you have some better options available to you?
>
> A:  Such as:
>
> Q: Well, maybe you could go to a shooting range and learn how to actually
> fire a weapon?
>
> A:  That's been done before.

Q:  Okay.  Wasn't done by this group that night was it?

A:  Not that night, no.

Q:  Okay.  And, in fact, I don't believe you've ever told the FBI about any attempt to learn how to fire a weapon?

A:  I'm pretty sure I mentioned that No. 3, Abdirahman Bashir, and No. 13, Guled Omar, went to a firing range together.

(Doc. No. 853 (Tr. at 888).)

Petitioner argues it was error for counsel to elicit such testimony and that there was no strategic reason for eliciting this testimony.  The government responds that the questions posed to the government witness by trial counsel were to establish prior inconsistent statements by said witness, which is a sound trial strategy.

The Court finds that Petitioner cannot show he was prejudiced by this testimony, given the overwhelming evidence at trial supporting his convictions, including taped conversations in which Petitioner can be heard stating he wanted to fire shoulder-mounted rockets at enemies of ISIS and that "AKs and RPGs, that's what we're supposed to be playing with."   (Trial Ex. 229 and 230.)

Accordingly, the Court finds this claim to be without merit.

### 7.   Failure to Sequester and Call Witnesses at Trial

Petitioner also claims that trial counsel was ineffective for failing to sequester and call as witnesses his mother and sister who would have corroborated some critical aspects of his testimony and serve as character witnesses on his behalf.  Petitioner provides no specifics, however, as to how these witnesses would have corroborated critical aspects of his testimony.

Again, assuming it was error to not sequester Petitioner's mother and sister so that they could be called as witnesses, Petitioner has not demonstrated prejudice given the overwhelming evidence supporting his convictions.  As a result, Petitioner cannot show that but for such failure, there is a reasonable likelihood that the result of the trial would have been different.

### 8.   Cumulative Ineffective Assistance of Counsel

Petitioner asserts that each individual error, when considered cumulatively, requires this Court to vacate his convictions or sentence.  Petitioner acknowledges that the Eighth Circuit has rejected the cumulative error doctrine in United States v. Stewart, 20 F.3d 911, 917-18 (8th Cir. 1994), but asserts that the holding in Stewart runs afoul of Strickland.

Petitioner has presented no authority in support of the argument that the

Stewart decision runs afoul of Strickland.  In fact, Stewart remains the controlling

law in the Eighth Circuit.  See e.g. Wainwright v. Lockhart, 80 F.3d 1226, 1233

(8th Cir. 1996); United States v. Seng Xiong, No. 16-cr-167 (SRN/HB), 2020 WL

733407, at *23 (D. Minn. Feb. 13, 2020).  Accordingly, based on Stewart, the Court

finds this claim is without merit.

### 9.  Ineffective Assistance of Appellate Counsel

Petitioner asserts that on appeal, counsel was ineffective for failing to raise

the issue related to the Court's refusal to strike a juror for cause, who admitted

he could have trouble staying attentive throughout the trial.  (Doc. No. 849 (Tr. at

295, 332).)  This juror ultimately was a member of the impaneled jury.  Petitioner

does not claim, however, that said juror actually had trouble staying attentive

during the trial.  Accordingly, the Court finds that Petitioner has failed to

demonstrate prejudice as a result of the above juror being part of the impaneled

jury.

## IV.   Certificate of Appealability

With regard to the procedural rulings in this Order, the Court concludes

that no "jurists of reason would find it debatable whether the petition states a

valid claim of the denial of a constitutional right;" nor would "jurists of reason . . .

find it debatable whether the district court was correct in its procedural ruling."

Slack v. McDaniel, 529 U.S. 473, 484 (2000).  With regard to the decision on the

merits, the Court concludes that no "reasonable jurists would find the district

court's assessment of the constitutional claims debatable or wrong."  Id.

**IT IS HEREBY ORDERED** that:

1.  Petitioner's Motion to Vacate Under § 2255 [Doc. Nos. 914 and 918] is

    **DENIED;** and

2.  No Certificate of Appealability shall issue.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date:  August 5, 2020                    s/ Michael J. Davis
                                         Michael J. Davis
                                         United States District Court