UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 15-49 (MJD)

UNITED STATES OF AMERICA,

Plaintiff,

v.

GULED ALI OMAR,

Defendant.

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

Guled Omar was the leader of a group of young men who conspired to travel to Syria, where they would join, fight, and kill for the Islamic State in Iraq and the Levant (ISIL). He is serving a 420-month prison sentence for offenses committed in furtherance of that plot.

Omar now asks this Court to order his immediate release, raising arguments about his sentence that failed on direct appeal and in his motion under 28 U.S.C. § 2255. Doc. Nos. 1159, 1161. He also claims he has rehabilitated. His claims are foreclosed by statute and the Supreme Court's recent decisions in *Rutherford v. United States*, 608 U.S. 454, 146.S.Ct. 1320 (2026), and *Fernandez v. United States*, 608 U.S. 411, 146.S.Ct. 1292 (2026). His motion should be denied.

## Relevant Factual and Procedural Background

This case is very familiar to the Court, having presided over Omar's trial and sentencing, as well as the prosecutions of many other defendants involved

in the larger conspiracy. The relevant facts and procedural history are summarized below.

## I. The Conspiracy to Join the Islamic State in Iraq and the Levant

For more than a year, from March of 2014 until April of 2015, Omar and six co-conspirators conspired travel to Syria in order to join, fight for, and kill for, ISIL. Omar first attempted to travel there via Mexico with two others in May of 2014. His family intervened to stop that attempt. Omar tried again in November 2014, but law enforcement prevented him from boarding his flight.

Omar's role in the plot went far beyond his own attempts to reach Syria, however. As emir (leader) of the conspiracy, he played a key role in recruiting others and facilitating travel attempts. He coached other conspirators about what to say at a passport office, how to act at the airport, and how to find sources of travel funding. Trial. Tr. 589-594. He supplied money to a co-conspirator to pay for an expedited passport and drove that individual to the passport office. Trial Tr. 593-94, 599, 601. Omar also took credit for radicalizing his friend Abdi Nur, who successfully reached Syria. *E.g.* Trial Tr. 96-98. And when Hanad Mohallim, another young Minnesotan, arrived in Syria, Omar used Mohallim's travel to motivate his co-conspirators. *Id.* 57-58. Both Nur and Mohallim died fighting in the Middle East.

Omar was fervently dedicated to his goal of joining ISIL. He envisioned himself on the battlefield, launching rocket-propelled grenades: "I want to be the tank hunter in the video." *See* Trial Tr. 150. He also discussed the anticipated thrill of going on night-raids with ISIL and his belief that once in Syria or Iraq he would quickly obtain martyrdom in battle. *Id*. at 90-91, 85.

## II. Charges and Trial

### A. Omar Declines to Resolve the Charges

In April 2015, the FBI arrested Omar and his co-defendants pursuant to a criminal complaint. The men were indicted a month later. Doc. No. 65. The most serious charge against them at that stage was conspiring to provide material support to a terrorist organization, in violation of 18 U.S.C. § 2339B, which carried a maximum term of imprisonment of fifteen years. *Id*.

Early in the prosecution, the government informed Omar and his co-defendants that they had a window of time in which to resolve the charges against them with a plea to that offense. Doc. No. 945 at 14 (summarizing communications). After that, the government planned to pursue a second superseding indictment alleging the defendants had conspired to commit murder outside the United States, in violation of 18 U.S.C. § 956, a far more serious offense. *Id*. The prosecutors informed all defense counsel that if a § 956 charge were alleged in a future charging instrument, any subsequent resolution would require a plea to a § 956 charge. *Id*.

The government offered plea agreements to some defendants, but not to Omar, Mohamed Abdihamid Farah, or Abdirahman Yasin Daud, who were the most culpable of the conspirators. *Id*. However, the government invited counsel for Omar, Farah, and Daud to tender a settlement proposal if they wished. Prosecutors also conducted a "reverse proffer," during which Omar could hear the evidence against him to aid him in his decisionmaking. *Id*. at 15. Omar declined to propose a resolution. Nor did he enter an "open" plea to § 2339B, which was also a possibility available to him.

In October 2025, a grand jury handed down a second superseding indictment. Omar was charged with violating § 956, among numerous other offenses. Doc. No. 292.

**B. Trial**

Omar, Farah, and Daud proceeded to trial in 2016. Over the course of three weeks, the government presented evidence and witnesses demonstrating how Omar conspired to commit crimes in Syria, his attempts to travel overseas, and his leadership of the conspiracy.

Omar testified in his own defense at trial. He lied prolifically under oath. For example, Omar testified that his attempt to travel to Syria in May 2014 was not an attempt to join ISIL, but rather a "reward" for "making it through my first year in college with good grades." Trial Tr. 2659. In fact, Omar failed

one class and withdrew from two others, earning a passing grade only in his Arabic course.

Omar also falsely denied knowing that any of his co-conspirators were planning travel to Syria in 2014 and specifically denied knowing that two of his codefendants, Abdullahi Yusuf and Abdi Nur, were planning to leave the United States. Trial Tr. 2642-2643. That particular denial was belied by a vast quantity of evidence in the record as well as by Omar's own recorded words in 2015 when he took credit for radicalizing Nur before Nur left for Syria: "[t]hat's when we found Abdi. [unintelligible] That's when I started talking to him . . . He had the Anwar al-Awlaki. That's what he had down, but he was never like action type . . . We always used to tell him bro. [Remember when you were praying] all that. Wallahi, we were [lions] bro." *Id*. at 96-97.

The jury rejected Omar's lies and convicted him of all counts charged against him.

**III. Sentencing**

The sentencing proceedings in this case provided the Court with a unique insight into Omar's offenses and the landscape of similar cases charged in federal courts across the United States.

Prior to sentencing, the Court requested further information to allow it to fully consider the § 3553(a) factors. Specifically, the Court convened a hearing in which an expert testified as to de-radicalization programming

available within the Bureau of Prisons. *See* Doc. No. 655 (outlining procedures for the hearing).

Further, the Court directed the government to submit "a Report summarizing sentencing data from within the last two years from all cases around the country in which one or more defendants have been convicted of providing, or conspiring to provide, material support or resources to any foreign terrorist organization in violation of 18 U.S.C. § 2339B." Doc. No. 631 at 2. In accordance with that directive, the government summarized the sentences of twenty-six defendants and provided factual summaries of each case. Doc. No. 698.

Omar appeared for sentencing in November 2016. Doc. No. 756. The Court determined his Guidelines range was life in prison. Doc. No. 874 (Sent. Tr.) at 3. During his allocution, Omar told the Court he had changed his ideology and had "taken steps to . . . get myself better so that I may return to my community as a better man." *Id*. at 21. The Court rejected his claims: "So everything that you have said here I don't believe." *Id*. at 24. Omar was dedicated to his dreams of travelling to Syria and killing for ISIL. *See id*. at 38-39. Ultimately, the Court imposed a below-range, 420-month prison term, to be followed by a lifetime term of supervised release. Doc. No. 782. His dedication to the conspiracy and "charismatic" leadership of his fellow plotters were "why [Omar was] being locked up for" 420 months. Sent. Tr. 38-39.

## IV. Appeal and Post-Conviction Proceedings

Omar, Daud, and Farah appealed their convictions and sentences. The Eighth Circuit rejected all their claims. Relevant to this motion, Omar alleged that there was an unwarranted disparity between his sentence and those of his co-conspirators. *United States v. Farah*, 899 F.3d 608, 616 (8th Cir. 2018). The Eighth Circuit found no procedural or substantive error, explaining that "[t]he statutory direction to avoid unwarranted disparities among defendants [in § 3553(a)(6)] refers to national disparities, not differences among co-conspirators." *Id*. at 617 (quoting *United States v. Pierre*, 870 F.3d 845, 850 (8th Cir. 2017)).

Omar later filed a motion under 28 U.S.C. § 2255 alleging various claims of ineffective assistance of counsel. Doc. No. 914. Central to that motion was Omar's claim that he wished to plead guilty, but his trial counsel rendered ineffective assistance with respect to plea negotiations. *Id*. at 13, 15-16. The Court found Omar's allegations about his former attorney's performance were "inherently incredible." Doc. No. 962 at 6. Omar knew when he was first indicted that the government would not offer him a plea agreement, but he had the option to propose plea terms or enter an open plea. *Id*. at 13. Because Omar "maintained his innocence throughout these proceedings," the Court concluded Omar would never have admitted his guilt. *Id*. at 11-13. The Court denied the motion.

## V. Omar's Motion for Compassionate Release

Omar now seeks compassionate release. He argues that the Court should release him from prison based on supposed disparities between his sentence and those of four co-defendants, his rehabilitation, and his young age at the time he led the conspiracy. Doc. No. 1161 at 16. He asserts a disparity exists because "his sentence was nearly four times longer than" those who admitted responsibility early in the case, describing them as "four mostly similarly situated co-defendants." *Id*. at 28. Omar also seems to claim, incrorrectly, that he was not "allowed to plead guilty to a lesser charge" because the government invited him propose terms rather than offering a plea agreement. *Id*. at 3.

Prior to filing his motion, Omar presented a request to BOP, raising the same claims. Doc. No. 1159-2. The government therefore considers his motion to be ripe for this Court's adjudication.

### Framework for Compassionate Release Under § 3582(c)(1)(A)

A term of imprisonment, once imposed, may not be modified except as authorized by statute. Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a sentence only if it finds that "extraordinary and compelling reasons warrant such a reduction," that the reduction is "consistent with applicable policy statements" of the Sentencing Commission, and that the § 3553(a) factors, as applicable, support it. *United States v. Loggins*, 966 F.3d 891, 892 (8th Cir. 2020). The governing policy statement, U.S.S.G. § 1B1.13, sets out the six

categories of qualifying reasons—(1)medical circumstances; (2) age, (3) family circumstances, (4) victimization in custody, (5) "other reasons" of similar gravity, and (6) unusually long sentences—and separately bars relief unless the court determines that the defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(a)(2).

As the movant, Omar bears the burden of establishing his eligibility. *United States v. Avalos Banderas*, 39 F.4th 1059, 1062 (8th Cir. 2022). Before filing, a defendant must also satisfy the statute's exhaustion requirement—a mandatory claim-processing rule that the Court must enforce when the government raises it. *United States v. Houck*, 2 F.4th 1082, 1084 (8th Cir. 2021).

These provisions do not confer courts authority to revisit final sentences. "The compassionate release statute is not a freewheeling opportunity for resentencing." *United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022). The Supreme Court recently issued two opinions forbidding the use of motions under § 3582(c)(1)(A) as a means to present attack convictions and sentences. In *Fernandez v. United States*, the Court held that a prisoner attacking his conviction must proceed under 28 U.S.C. § 2255, not the compassionate-release statute—declining to let § 3582(c)(1)(A) substitute for a remedy Congress channeled elsewhere. 146 S.Ct. at 1306-07. That same day, in *Rutherford v. United States*, the Court held that a nonretroactive change in sentencing law

cannot—"considered by itself or in combination with other factors"—constitute an extraordinary and compelling reason for release, and it rejected the view that U.S.S.G. § 1B1.13(b)(6) permits courts to treat such changes as a basis for relief. 146 S.Ct. at 1335. The terms "extraordinary" and "compelling," the Court explained, "are not so flexible as to encompass any consideration." *Id.* at 1332.

## Argument

The Court should deny Omar's motion. His claims about his sentence are foreclosed by the Supreme Court's decision in *Fernandez*. Moreover, Omar cannot show that he is not a danger to the community, and the § 3553(a) factors independently require denial.

### I. Motions Under § 3582(c)(1)(A) Cannot Be Used as an End-Run Around 28 U.S.C. § 2255.

Omar's motion is based primarily on a claim the Eighth Circuit rejected on direct appeal and this Court denied in his § 2255 proceeding: his sentence represents an unwarranted disparity with those of his co-defendants who resolved their cases at the earliest possible time. Doc. No. 1161. That theory cannot supply an extraordinary and compelling reason.

*Rutherford* and *Fernandez* have now completely foreclosed motions under § 3582(c)(1)(A) as a means to raise claims about the length or legality of a sentence. *See Fernandez*, at 1306-07; *Rutherford*, at 1334-35. *Fernandez*, in

particular, made clear that compassionate release motions cannot be a substitute for proceedings under 28 U.S.C. § 2255, which are the only authorized vehicle for mounting a collateral attack to a defendant's sentence. *Fernandez*, at 1302. In doing so, the Supreme Court rejected prisoners' efforts "not only to bypass § 2255, but also to override it" via a compassionate release motion. *Id*. at 1302. Prisoners cannot avail themselves of § 3582 to bring claims that have "already been raised or decided in prior proceedings." *Id*. at 1303. "A reason is not 'compelling' if Congress has channeled it through the postconviction statutes." *Id*.

*Fernandez* controls the outcome here. The only vehicle for a collateral attack on Omar's sentence is § 2255. *Jones v. Hendrix*, 599 U.S. 465, 473, (2023) (holding that the saving clause of § 2255(h) cannot serve as an "end-run around AEDPA")). As in *Fernandez*, Omar "lost an argument on direct review and under § 2255 but then repackaged it in a motion under § 3582(c)(1)(A)(i)" in an attempt to obtain relief "on those twice-rejected grounds." *Fernandez*, at 1302. Specifically, the Eighth Circuit rejected his sentence-disparity claim on direct appeal. *Farah*, 899 F.3d at 617. After that, this Court denied Omar's claim that he would have pleaded guilty to a material-support claim when the government provided a window of opportunity to resolve the case on a less-serious charge. Doc. No. 962 at 11-13. Now, he asks this Court to (1) find a sentencing disparity exists because Omar declined to resolve his case early,

and (2) order his release on that basis—despite this Court's finding that Omar would never have availed himself of that opportunity. To do so would contravene the Eighth Circuit's opinion and reverse this Court's key findings in the § 2255 proceedings. This Court must deny Omar's attempt to "pursue[] a collateral attack outside the rigorous habeas framework." *Fernandez*, at 1302.[1]

Omar does not address *Fernandez* in his filings, other than to state in a footnote that his motion is "*not* relying on [U.S.S.G. § 1B1.13(b)(6)] or on any factors *Rutherford* and *Fernandez* held are non-permissible." Doc. No. 1161 at 2 n.1 (emphasis in original). For all the reasons stated above, he is wrong. His motion is functionally identical to the relief the Supreme Court held was unlawful in *Fernandez*.[2]

---

[1] If Omar had raised his current claim under § 2255, it would fail for at least three reasons. First, it is time barred under 28 U.S.C. § 2255(f). Next, it is a second-or-successive claim, but Omar has not secured permission from the Eighth Circuit to file it. *Hill v. Morrison*, 349 F.3d 1089, 1090 (8th Cir. 2003) Finally, the issue was fully litigated on appeal and is therefore not cognizable under § 2255. *Sun Bear v. United States*, 644 F.3d 700, 706 (8th Cir. 2011) (en banc) (citing *Davis v. United States*, 417 U.S. 333, 346-47 (1974)).

[2] Similar reasoning forecloses Omar's claims about his young age at the time of the offenses. That argument is nothing more than an invitation for the Court to revisit its sentencing decision in this case, which is not a valid reason for compassionate release. *Crandall*, 25 F.4th at 586.

Moreover, since *Rutherford* and *Fernandez* were decided, the Eighth Circuit has denied several defendants' efforts to challenge their sentences through motions under § 3582(c)(1)(A). Each of those cases, like Omar's claim, dealt with some kind of sentencing disparity. First, the Eighth Circuit held that "nonretroactive legal changes," and the sentencing disparities that result from them "cannot, whether offered alone or in combination with other insufficient factual considerations, constitute 'extraordinary and compelling' reasons for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)." *United States v. Loggins* (*Loggins II*), 181 F.4th 883, 887 (8th Cir. 2026). Next, the Eight Circuit decided *United States v. Faulkner*, --- F.4th ----, 2026 WL 2639531 (8th Cir. Sept. 8. 2026), which also addressed sentencing disparities arising from non-retroactive changes in law. Thus, the Supreme Court and the Eighth Circuit have rejected the notion that sentencing disparities can constitute "extraordinary and compelling" reasons for a sentence reduction. *Loggins II* and *Faulkner* further undermine Omar's claim, as it is also based on a purported sentencing disparity. For that reason, too, this Court should find that Omar's motion is not a valid § 3582(c)(1)(A) claim and deny it.

## II. Omar's Rehabilitation, Standing Alone, Cannot Carry the Motion.

Because Omar's arguments about his sentence fail, the Court is left with only his assertions that he has rehabilitated. But "[r]ehabilitation of the

defendant alone" is not an extraordinary and compelling reason and may be weighed only "in combination" with some other qualifying circumstance. 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d). Because Omar has identified no qualifying medical, family, or other reason, there is nothing for his rehabilitation to combine with, and it cannot independently justify relief here.

Moreover, Omar's claim that he has rehabilitated must be weighed against his documented history of dishonesty. Omar lied to his family and the authorities in an effort to fulfill his goals of committing violence in Syria. That pattern continued through the prosecution of this case. He "repeatedly lied, under oath" at trial, "was not credible during his allocution" at sentencing, and his allegations of ineffective assistance of counsel were "not credible." Doc. No. 962 at 12-13. The Court should reject his most recent attempts to convince others that he has changed because Omar is a deceptive person.

## III. Omar Is a Danger to the Community.

Even if Omar had identified a qualifying reason, § 1B1.13(a)(2) bars relief unless the Court finds that he "is not a danger to the safety of any other person or to the community," as measured by the factors in 18 U.S.C. § 3142(g). Omar cannot make that showing. In fact, the danger inquiry *requires* denial of his motion.

The risk Omar poses to others is manifest in his efforts to join ISIL and kill others on its behalf. That organization is one of the most violent to have

ever existed. But Omar is especially dangerous because, as the Court explained at sentencing, he is charismatic and deceptive. Sent. Tr. 38-39. If released, Omar can easily use those characteristics to plot violence once again. The Court should find early release would undermine public safety and deny his motion on that basis.

**IV. The Federal Sentencing Factors Do Not Favor Early Release.**

Finally, the § 3553(a) factors foreclose release. Sentencing courts can deny a motion for compassionate release based on the federal sentencing factors alone. *See United States v. Rodd*, 966 F.3d 740, 748 (8th Cir. 2020). Here, none of the § 3553(a) factors favor relief, but the seriousness of Omar's offense, his characteristics, and the need to deter Omar and protect the public are especially salient.

Omar offered his own person in the service of a deadly criminal terrorist organization. He took dozens of deliberate steps, engaged in countless conversations, and offered innumerable pieces of advice to other like-minded jihadists, all to further the aims of ISIL. He admired terrorists and ISIL fighters and associated himself with them. His actions and characteristics require him to remain in prison.

Deterrence and the need to safeguard this community also require denial. Omar is a uniquely dangerous defendant. If released, nothing would stop him from finding impressionable young men to influence and recruit to

commit deadly violence. "[A]n act of terrorism represents a particularly grave threat because of the dangerousness of the crime and the difficulty of deterring and rehabilitating the criminal, and thus that terrorists and their supporters should be incapacitated for a longer period of time." *United States v. Meskini*, 319 F.3d 88, 92 (2d Cir.), *cert denied sub nom. Haouari v. United States*, 538 U.S. 1068 (2003).

For all these reasons, the Court should find that early release would contravene the goals of federal sentencing practice and deny his motion on that basis as well.

## **Conclusion**

For these reasons, the government respectfully requests that the Court deny Omar's motion for compassionate release.

Dated: October 2, 2026

Respectfully submitted,

DANIEL N. ROSEN
United States Attorney

*s/Katharine T. Buzicky*

BY: KATHARINE T. BUZICKY
Assistant U.S. Attorney
United States Attorney's Office
Warren E. Burger U.S. Courthouse
316 N. Robert Street
St. Paul, MN 55101
Attorney ID: 671031MA
651-848-1927
Katharine.Buzicky@usdoj.gov